UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAYLA HUNNICUTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-0042-CVE-FHM |
| | ) | |
| CHF SOLUTIONS, INC., a foreign | ) | |
| corporation doing business in Oklahoma, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court are Defendant's Motion to Dismiss (Dkt. # 11) and Defendant's Alternative Motion to Transfer Venue (Dkt. # 12). Plaintiff Jayla Hunnicutt filed a petition (Dkt. # 2-3) in state court alleging that defendant CHF Solutions, Inc. (CHF) sexually harassed her and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. (Title VII). CHF removed the case to this Court. Dkt. # 2. CHF seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) because Hunnicutt failed to timely exhaust her administrative remedies, and pursuant to Fed. R. Civ. P. 12(b)(3) because this Court is an improper venue for the dispute. Dkt. # 11. In the alternative, CHF seeks to have the case transferred to the United States District Court for the District of Minnesota. Dkt. # 12.

**I.**

Hunnicutt is a female who resides in Tulsa, Oklahoma. Dkt. # 2-3, at 3. CHF is a Minnesota medical technology company. Dkt. # 13-2, at 1. Hunnicutt began her employment with CHF on January 23, 2007, as Territory Manager for Oklahoma, Western Arkansas, and a portion of Texas. Dkt. # 2-3, at 3. She alleges that, at a meeting in February 2007, David Springer, President and CEO of CHF, made inappropriate remarks and comments of a sexual nature to her. Id. The week of

October 3, 2007, Hunnicutt's supervisor, Pat Wethington, placed her on a 30-day Performance Improvement Plan (PIP). Id. During the discussion of the PIP, Wethington allegedly told Hunnicutt that she was "too attractive" and "doctors would do anything for her but nurses would not." Id. Wethington allegedly told other sales representatives that Hunnicutt's performance was unacceptable because she was "too attractive." Id. at 4.

At a sales meeting in Orlando, Florida on February 12-13, 2008, "Hunnicutt was accused in front of all the other sales representatives of sleeping with a co-workers [sic] . . . ." Id. A few weeks later, at a new hire training session, "Springer and Wethington were heard to say to other sales representatives and new hires that . . . '[Hunnicutt] was going around [performing sexual acts on doctors].'" Id.

Hunnicutt alleges that she was constructively discharged. She submitted her resignation on March 13, 2008, to be effective March 31, 2008. Id. She alleges that, upon submitting her resignation, she was told to leave immediately. Id.

As a condition of employment, Hunnicutt signed a Confidentiality and Noncompetition Agreement (CNA). Dkt. # 13-2. The CNA contains obligations of confidentiality, covenants not to compete, and agreements relating to inventions. The CNA also contains choice of law and forum selection provisions:

> This Agreement will be governed by and interpreted according to the substantive laws of the State of Minnesota without regard to such state's conflicts law. Any action at law, suit I [sic] equity, or judicial proceeding arising directly, indirectly, or otherwise in connection with, or of, related to or from this agreement or any provision hereof, shall be litigated only in the courts of the State of Minnesota, County of Hennepin. Employee waives any right Employee may have to transfer or change the venue of any litigation brought against Employee by the Company.

Dkt. # 13-2, at 14-15.

2

On April 9, 2008, Hunnicutt's counsel sent a letter to CHF advising it of Hunnicutt's discrimination claims and inviting CHF to attempt to resolve the matter before Hunnicutt sought "the involvement of the [Equal Employment Opportunity Commission (EEOC)]." Dkt. # 13-2. Hunnicutt's counsel sent "a detailed statement to the EEOC Questionnaries" to the EEOC on December 23, 2008. Dkt. # 14-2. Hunnicutt filed a Notice of Charge of Discrimination with the EEOC dated April 1, 2009. Dkt. # 13-2, at 26.

## II.

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), a court must determine whether it has subject matter jurisdiction over the parties' claims. Rule 12(b)(1) motions are either facial or factual attacks on the sufficiency of the complaint:

> Under a facial attack, the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true. In a factual attack . . . however, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. In such a situation, the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1).

Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union v. Cont'l Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005) (citations omitted). A court need not convert a 12(b)(1) motion to one for summary judgment when considering matters outside the pleadings. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). However, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." Id. The jurisdictional question is intertwined with the merits when subject matter jurisdiction is dependent on the same statute as the substantive claim. Id. That is not the case here. See Sizova v. Nat'l Inst. of Standards & Tech.,

3

282 F.3d 1320, 1324-25 (10th Cir. 2002) (rejecting plaintiff's argument that subject matter jurisdiction was intertwined with the merits of a Title VII case, where the jurisdictional issue was exhaustion of administrative remedies).

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3), a court must determine whether venue is proper. "A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir. 1992). On a Rule 12(b)(3) motion, the Court may consider matters outside the pleadings, and facts alleged in the complaint are taken as true to the extent that they are uncontroverted by defendant's evidence. See Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc., No. 09-CV-153-TCK-TLW, 2010 WL 582205, at *3 (N.D. Okla. Feb. 10, 2010); see also Sucampo Pharms., Inc. v. Astellas Pharma, 471 F.3d 544, 549-50 (4th Cir. 2006); Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005); Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998); Vazquez v. Central States Joint Bd., 547 F. Supp. 2d 833, 865 n.18 (N.D. Ill. 2008). The Court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

**III.**

A.      Timeliness of Exhaustion of Administrative Remedies

Exhaustion of administrative remedies is a "'jurisdictional prerequisite' to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996). However, timely exhaustion of administrative remedies is not a jurisdictional prerequisite, because filing deadlines may be subject to equitable tolling in appropriate circumstances. See, e.g., Sizova, 282 F.3d at 1326 (remanding with directions to allow limited discovery on the timeliness of plaintiff's commencement of the administrative complaint process); see also Beene v. Delaney, 70 Fed. App'x 486, 488 (10th Cir. 2003) (unpublished)[1] (determining that the district court erred in dismissing plaintiff's claims under Rule 12(b)(1) for failure to contact an equal employment opportunity counselor within the requisite forty-five days, but affirming on the basis that defendant was entitled to summary judgment under Rule 56). Thus, on a 12(b)(1) motion, a court may determine whether administrative remedies were exhausted, but may not resolve issues relating to the timeliness of exhaustion. The Court cannot determine the timeliness of Hunnicutt's initiation of EEOC charges at this stage of proceedings.

B.      Improper Venue

CHF argues that venue in this Court is improper because the parties agreed to litigate all employment disputes in Minnesota. Dkt. # 13, at 14. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.

---

[1]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

5

§ 1406(a). If the CNA's forum selection clause is applicable, mandatory, and enforceable, venue is improper in this Court.

Hunnicutt does not argue that the CNA's forum selection clause does not govern this dispute.[2] She argues that the forum selection clause is unenforceable. Dkt. # 14, at 4-5. She argues that the CNA is an adhesion contract, see id. at 5 ("[i]n other words, if Plaintiff is going to be employed by Defendant, she must accept the terms of this Agreement;" "a quick glance of the Agreement reveals it is a form contract mass produced for all of CHF's employees to sign"), and it would be unfair and unreasonable to force Hunnicutt, an Oklahoma resident, to litigate this case in Minnesota, id.[3] Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992); see also Carnival Cruise Lines, Inc.

---

[2] CHF argues that Hunnicutt's suit raises issues "in connection with," "related to," or "arising directly [or] indirectly" from the CNA because the CNA established Hunnicutt's status as an "at will" employee. Dkt. # 13, at 15. It also argues that the forum selection clause's expansive language should be read to cover all actions arising from the employment relationship evidenced by the contract. Id. at 16; see also John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1075 (3d Cir. 1997) (interpreting disputes "arising . . . in relation to" a contract broadly, and rejecting the argument that the forum selection clause applied only to disputes growing out of the parties' duties under the contract).

[3] Hunnicutt does not argue that forum selection clauses are generally inapplicable to Title VII suits. See Dkt. # 14, at 4-7. There is authority to suggest that forum selection clauses are applicable to Title VII suits. See E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 295 n.10 (2002) (analogizing agreements to arbitrate to forum selection clauses and stating that agreements to arbitrate federal statutory claims are enforceable); Chapman v. Dell, Inc., No. EP-09-CV-7-KC, 2009 WL 1024635, at *3 (W.D. Tex. April 15, 2009) (rejecting plaintiffs' argument that forum selection clauses are categorically unenforceable in Title VII cases). However, courts in other circuits have found that forum selection clauses may be entitled to less deference in civil rights cases. E.g., Red Bull Assocs. v. Best Western Int'l, Inc., 862 F.2d 963, 967 (2nd Cir. 1988).

v. Shute, 499 U.S. 585, 595 (1991) (characterizing the plaintiff's burden in seeking to set aside a forum selection clause on the grounds of inconvenience as "heavy").

The first question is the law applicable to the forum selection clause. CHF argues that, because the CNA contains a Minnesota choice of law provision, Minnesota law applies.[4] Dkt. # 13, at 16 n.5; see Yavuz v. 61 MM Ltd., 465 F.3d 418, 427 (10th Cir. 2006) (looking to the contractual choice of law provision to determine what law governed interpretation of a forum selection clause in an international contract); see also Jones v. KP&H LLC, 288 Fed. App'x 464, 467 (10th Cir. 2008) (unpublished)[5] ("[b]ecause the [contract] provides that Kansas law governs the construction of its terms, we apply Kansas substantive law to this case"). Hunnicutt assumes that Oklahoma law applies. Dkt. # 14, at 5. The Court need not resolve this issue because federal, Minnesota, and Oklahoma law regarding forum selection clauses are substantially similar,[6] and the interpretation and application of the forum selection clause would not change based on the choice of law. Cf. Dawson v. Fitzgerald, No. 99-1054, 1999 WL 651413, at *2 (10th Cir. Aug. 26, 1999) (unpublished) ("because 'there are no material discrepancies between Colorado law and federal common law on

---

[4]  However, CHF goes on to cite federal law in support of its arguments. See Dkt. # 13, at 16-18.

[5]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[6]  Noting that "the issue of the validity of forum selection clauses has not been specifically decided by the Oklahoma Supreme Court," the Oklahoma Court of Civil Appeals has stated that "[a]bsent compelling reasons otherwise, forum selection clauses are enforceable," and cited federal law in support of the proposition. Adams v. Bay, Ltd., 60 P.3d 509, 510 (Okla. Civ. App. 2002) (citing Carnival, 499 U.S. 585, and M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1907)). Minnesota's standard is similar. See Cell v. Moore & Schley Sec. Corp., 449 N.W.2d 144, 149 (Minn. 1989) (citing M/S Bremen, 407 U.S. 1, in a discussion of when a forum selection clause is unenforceable); see also C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc., 772 N.W.2d 528, 534 (Minn. App. 2009) (stating that forum selection clauses will be enforced unless unfair or unreasonable).

7

these matters' we need not decide 'whether Colorado state law or federal common law controls the validity and interpretation of the forum selection clause'") (quoting Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 320 (10th Cir. 1997)).

The CNA provides: "[a]ny action at law, suit I [sic] equity, or judicial proceeding arising directly, indirectly, or otherwise in connection with, or of, related to or from this agreement or any provision hereof, shall be litigated only in the courts of the State of Minnesota, County of Hennepin." Dkt. # 14-2, at 14. The CNA unambiguously states that the Minnesota state court located in Hennepin County is the exclusive forum for litigation. "[W]hen venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory." American Soda LLP v. U.S. Filter Wastewater Gp., Inc., 428 F.3d 921, 927 (10th Cir. 2005). Thus, Hunnicutt may avoid the forum selection clause only by demonstrating that it is unfair or unreasonable. Excell, 106 F.3d at 321.

Hunnicutt argues that "it would be unreasonable under the circumstances of the case to force Plaintiff, a sole employee who resides in Tulsa, to bring this action in Minnesota against a business which sells medical devices nationwide, simply because its headquarters are in Minnesota."[7] Dkt. # 14, at 5. Hunnicutt bears a heavy burden to demonstrate that the forum selection clause is unenforceable on grounds of inconvenience. See Carnival, 499 U.S. at 595. Hunnicutt has offered

---

[7] Hunnicutt also argues that it would not be inconvenient for CHF to litigate this dispute in Oklahoma. Dkt. # 14, at 6. While this might be relevant to discretionary transfer of this case, it does not demonstrate that it would be unfair or substantially inconvenient for Hunnicutt to litigate in Minnesota. Additionally, Hunnicutt identifies no potential witness, other than herself, who resides in Oklahoma (nor does she identify any potential witness who resides in Minnesota). Id.

no evidence suggesting that it would be uniquely or particularly difficult for her to litigate in Minnesota. Minnesota is not a "remote alien forum;" nor is this dispute "an essentially local one inherently more suited to resolution" in Oklahoma than in Minnesota. Id. Although Hunnicutt's complaint did not state where most of the alleged acts of harassment took place, CHF argues that they took place in Arizona, Texas, Minnesota, and Florida. Dkt. # 13, at 11-12. Further, CHF has provided evidence that Hunnicutt traveled to Minnesota for training and meetings, that her pay and benefits were administered in Minnesota, that the employment relationship was negotiated in Minnesota, and that six of its eleven likely witnesses reside in Minnesota. Id. All of this suggests that this matter is not uniquely local, such that it would be unreasonable to litigate outside Oklahoma. The Supreme Court has stated that companies may have an interest in limiting the fora in which it potentially could be subject to suit. Carnival, 499 U.S. at 593. CHF argues that this is one of the goals of the forum selection clause in the CNA, and the Court finds this reasonable. Dkt. # 13, at 10. It would not be substantially inconvenient or unreasonable to litigate this dispute in Minnesota. Therefore, the forum selection clause is not unenforceable on that basis.

Hunnicutt also argues that the forum selection clause is unenforceable because the CNA was the product of unequal bargaining power and is a form contract. Dkt. # 14, at 5-6. The Supreme Court rejected such arguments in the context of a forum selection clause in a cruise ship ticket. Carnival, 499 U.S. at 593. However, in some circumstances, unequal bargaining power may invalidate a forum selection clause. Cf. Excell, 106 F.3d at 321 (noting that there was no evidence of unequal bargaining power that would render enforcement unfair or unreasonable). Here, Hunnicutt argues that it would be unfair to enforce the forum selection clause because she was required to sign the CNA as a condition of employment. Dkt. # 14, at 5 ("[i]n other words, if

9

Plaintiff is going to be employed by Defendant, she must accept the terms of this Agreement"). This is not a reason to invalidate the CNA. Hunnicutt has not suggested that she was forced to accept employment, or that CHF took advantage of her in any way in inducing her to accept the position. The mere fact that the CNA was a condition of her employment does not make it unfair to enforce the CNA. Further, the fact that the CNA was a form contract, Dkt. # 14, at 5,[8] does not render it unenforceable in this case. Hunnicutt does not argue that she had no notice of the forum selection clause, or that she would not have been able to negotiate its terms, had she wanted to. The fact that CHF asked all employees to sign the CNA does not render it unenforceable.

For these reasons, the Court finds that it would not be unfair or unreasonable to enforce the CNA's mandatory forum selection clause. The forum selection clause mandates the Minnesota state court in Hennepin County as the exclusive venue for this suit. This Court cannot transfer a case to a Minnesota state court. Therefore, dismissal pursuant to 28 U.S.C. § 1406(a) is proper.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Dkt. # 11) is **granted**. This case is dismissed pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

**IT IS FURTHER ORDERED** that Defendant's Alternative Motion to Transfer Venue (Dkt. # 12) is **moot**.

**DATED** this 18th day of March, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[8] Hunnicutt provides no evidentiary support for the assertion that "a quick glance of [sic] the Agreement reveals it is a form contract mass produced for all of CHF's employees to sign." Dkt. # 14, at 5.